1
2
3
4 UNITED STATES DISTRICT COURT
5 NORTHERN DISTRICT OF CALIFORNIA
6
7 ASIACELL COMMUNICATIONS PJSC,
8                  Plaintiff,
9      v.
10 JOHN DOE I, et al.,
11                  Defendants.

Case No. 17-cv-07203-PJH

**ORDER DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE OF PROCESS**

Re: Dkt. No. 18

12
13

14        Before the court is plaintiff Asiacell Communications PJSC's ("Asiacell") motion to

15 permit alternative service of process. Dkt. 18. No opposition has been filed, and the time

16 for doing so has passed. The matter is fully briefed and suitable for decision without oral

17 argument. Having read Asiacell's papers and carefully considered their arguments and

18 the relevant legal authority, and good cause appearing, the court hereby rules as follows.

19                                        **BACKGROUND**

20        Plaintiff Asiacell filed an amended complaint on June 18, 2018, asserting four

21 causes of action: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C.

22 §§ 1030, et seq.; (2) violation of the California Comprehensive Computer Data Access

23 and Fraud Act, California Penal Code § 502; (3) violation of the Defend Trade Secrets

24 Act, 18 U.S.C. § 1832; and (4) violation of the Uniform Trade Secrets Act, California Civil

25 Code §§ 3426, et seq. FAC, Dkt. 20.

26        In April 2017, Asiacell learned that its customer information had been put up for

27 sale on a website, www.CheckupIQ.com. FAC ¶¶ 4, 16–19. Asiacell alleges the posted

28 information consisted of its trade secrets and confidential customer demographic

1  information.  Id. ¶¶ 1, 20.  Asiacell alleges that defendants used a group of licensee

2  credentials in a coordinated effort over a period of several months to access Asiacell's

3  computers and copy sensitive information.  Id. ¶ 20.  Defendants then allegedly offered

4  Asiacell's confidential, proprietary, and trade secret information for sale on

5  CheckupIQ.com.  Id.

6       Asiacell negotiated with CheckupIQ.com in an attempt to remove the information

7  from public display, although CheckupIQ.com demanded payment and made other

8  threats regarding the security of Asiacell's computer systems.  Id. ¶¶ 35–55; Dkt. 18 at 2–

9  3.  The parties communicated via email.  Dkt. 18-2 ("Jennings Decl."), Exs. 1, 3–5.  By

10  April 12, 2018, the email addresses defendants had been using to correspond with

11  Asiacell began returning "bounce back" emails indicating that email was undeliverable to

12  those addresses, and that defendants' email addresses were no longer valid.  Id., Ex. 6.

13  Defendants had also taken down their website and Twitter page.  Id., Exs. 7–8.

14       On January 5, 2018, Asiacell sought leave from this court to propound third-party

15  discovery on three entities associated with hosting defendants' online activities "so that

16  service of process may be made": (1) CloudFlare, Inc., (2) GoDaddy.com, LLC, and

17  (3) Domains by Proxy, LLC.  Dkt. 9.  The court granted the request.  Dkt. 12.  Asiacell

18  served discovery requests on those three entities and received responses.  Jennings

19  Decl. ¶¶ 11–13, Exs. 9–11.  Those productions listed various names, addresses or partial

20  addresses, phone numbers, debit card information, IP addresses, and email addresses

21  associated with the website CheckupIQ.com.  Id. ¶¶ 14–17, Exs. 9–11.

22       To the extent the third-party production revealed physical addresses, it suggested

23  defendants could be located in Iraq, Hungary, Jordan, Turkey, or India.[1]  Dkt. 18 at 4.

24  Plaintiff alleges that none of the physical addresses were complete enough to attempt to

25  effect service abroad.  Id. ¶¶ 14–15.

26

27  _____

28  [1] Asiacell is an Iraqi company, and it suspects that defendants could also be located outside of the United States.  Although not yet presented, the court notes that there are likely unresolved issues in this action regarding personal jurisdiction and venue.

2

On June 15, 2018, Asiacell brought the present motion seeking leave from the court to serve defendants with its first amended complaint by posting it on a Facebook page, sending it using Facebook messenger, and emailing it to a number of email addresses. Dkt. 18. As the defendants have not appeared in the case, the motion is unopposed.

## DISCUSSION

### A.   Serving an Individual in a Foreign Country, Rule 4(f)

Federal Rule of Civil Procedure 4(f) governs serving an individual in a foreign country. Fed. R. Civ. P. 4(f). The Rule provides three methods to effect service "at a place not within any judicial district of the United States[.]" Id.

Federal Rule of Civil Procedure 4(f)(3) permits service "at a place not within any judicial district of the United States . . . by . . . means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002). "Service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." Rio Properties, Inc., 284 F.3d at 1014.

Regarding the first requirement, "the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is "commit[ted] to the sound discretion of the district court." Id. at 1016. "[S]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief." Id. at 1015 (internal quotation marks omitted). Rather, it is "merely one means among several which enables service of process on an international defendant." Id. A plaintiff "need not have attempted every permissible means of service of process before petitioning the court for alternative relief." Id. at 1016.

Regarding the second requirement, "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention[.]" Id. at 1015 n.4. But the Hague Convention is not itself a bar to alternative service under the Rule: "numerous courts have authorized alternative service

3

under Rule 4(f)(3) even where the Hague Convention applies" including "in cases involving countries that . . . have objected to the alternative forms of service permitted under Article 10 of the Hague Convention." Richmond Techs., Inc. v. Aumtech Bus. Sols., Case No. 11-cv-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) (collecting cases). Still, it remains the plaintiff's burden to "show that the 'other means' is not prohibited by international agreement." Williams-Sonoma Inc. v. Friendfinder Inc., Case No. 06-cv-06572-JSW, 2007 WL 1140639, at *1–2 (N.D. Cal. Apr. 17, 2007) (listing the numerous countries in which defendants were located and finding that plaintiff "has demonstrated that service via email is not prohibited by an international agreement"); accord Facebook, Inc. v. Banana Ads, LLC, Case No. 11-cv-03619-YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (recounting plaintiff's proof for each country at issue that service via email is not prohibited: "Facebook also has demonstrated that service via email is not prohibited by an international agreement.").

The same analysis applies to service by social media platform like Twitter or Facebook. E.g., St. Francis Assisi v. Kuwait Fin. House, Case No. 16-cv-03240-LB, 2016 WL 5725002, at *2 (N.D. Cal. Sept. 30, 2016).

Plaintiff argues that it has received discovery responses from third parties providing information about defendants. Plaintiff has been able to identify at least five countries that might be the appropriate location for service: Iraq, Hungary, Jordan, Turkey, and India. Dkt. 18 at 4. But plaintiff's brief entirely ignores the legal requirement that service is only allowed if it is not prohibited by international agreement, and it offers no argument (or support) that any of the five listed countries (or any other country) does not prohibit service by email or Facebook. Plaintiff must make some showing that this legal requirement is satisfied. E.g., Williams-Sonoma Inc., 2007 WL 1140639, at *2; Facebook, Inc., 2012 WL 1038752, at *2.

**B.    Due Process**

"Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process. To meet this requirement, the

method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Rio Properties, Inc., 284 F.3d at 1016–17 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (Jackson, J.)).

Service by email can comply with due process, although the Ninth Circuit is "cognizant of its limitations." Rio Properties, Inc., 284 F.3d at 1018. Service by email requires some indication that the email will be received by the intended recipient. Id. The Ninth Circuit has cautioned courts with respect to service by email: "In most instances, there is no way to confirm receipt of an email message. . . . Accordingly, we leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case." Id. District courts have permitted service by email when plaintiffs have "established that the email accounts they have for defendants have been effective means of communicating with the defendants, [such that they] would serve the purposes of ensuring the defendants receive adequate notice of this action and an opportunity to be heard." Williams-Sonoma Inc., 2007 WL 1140639, at *2; Facebook, Inc., 2012 WL 1038752, at *2 ("Facebook has valid email addresses for each of the Defendants") (emphasis added).

The same analysis applies to service by social media platform like Twitter or Facebook. E.g., St. Francis Assisi, 2016 WL 5725002, at *2.

Plaintiff argues that it has communicated with defendants via email in the past and that, although defendants have shuttered their website, their email addresses, and their Twitter page, they maintain a Facebook page. Dkt. 18 at 8–9.

But plaintiff explicitly claims that none of the email addresses it has successfully used to communicate with defendants in the past are operable today. Id. at 3, 8. Plaintiff asks the court to allow it to effect service of process by sending emails to fifteen email addresses that third-party discovery indicates are "affiliated" with defendants. Id. at 5. But plaintiff knows that two of those email addresses will not work. Compare id. at 5

(asking the court to permit service via ceo@checkupiq.com and mark@checkupiq.com),
with id. at 3 ("an email on April 12, 2018 sent to Mark@checkupiq.com and
CEO@checkupiq.com . . . received a bounce back email indicating that the email was
undeliverable"). Four more email addresses on that list, which seem unlikely to be in
operation, are also directed to the checkupiq.com domain. Id. at 3 (other checkupiq.com
domain email addresses and the website are "inoperable").

Critically, plaintiff offers no indication that emails sent to any of the email
addresses will actually be directed to defendants. First, plaintiff has not actually
corresponded with defendants using any of the listed email addresses, other than those
that are no longer operable. Second, plaintiff argues that defendants provided "partial
and fake [physical] addresses to Cloudflare, GoDaddy, and Domains by Proxy" yet asks
the court to determine that due process is satisfied by sending correspondence to email
addresses defendants provided to the same entities. Id. at 8; see also Jennings Decl.
¶ 14 ("These addresses appeared partial or made up"). Plaintiff offers no reason to
believe that defendants would provide working email addresses while providing
inaccurate physical addresses. Third, even if some of the listed email addresses are
affiliated with some defendants, there is no indication that any defendant will actually
receive or be made aware of plaintiff's emails to those addresses. Without any prior,
successful communication between plaintiff and defendants using those email addresses,
the court could not infer that defendants received any future email plaintiff might send.
Cf. Facebook, Inc., 2012 WL 1038752, at *2 ("Facebook has valid email addresses for
each of the Defendants") (emphasis added); Williams-Sonoma Inc., 2007 WL 1140639,
at *2 (plaintiffs "established that the email accounts they have for defendants have been
effective means of communicating with the defendants").

Plaintiff's request to effect service by posting to what it suspects is defendants'
Facebook page presents similar problems. First, defendants have shut down their main
website, email addresses, and Twitter page. Dkt. 18 at 3. There is little reason to believe
that they are maintaining an active presence on their Facebook page such that the court

6

can be assured they will receive notice from plaintiff's postings or messages. Jennings Decl. ¶ 18, Ex. 15 (only activity on Facebook page appears to be a single post on "February 10," with no year indicated). Second, plaintiff has not actually corresponded with defendants using the Facebook website or Facebook messenger at any point, so the court has no basis to believe Facebook would ever have been an effective communication method. Third, plaintiff does not aver that the Facebook page it would target is controlled by defendants; it claims only that, when researching how to serve its complaint, "Asiacell located a Facebook page which purports to be affiliated with www.checkupiq.com." Id. ¶ 18; Dkt. 18 at 9 (the "Facebook page appears to advertise for that business and can receive messages").

For the reasons stated above, the court finds that plaintiff's request to effect service via email and Facebook does not comply with the requirements of Rule 4(f)(3), nor is it reasonably calculated to apprise defendants of the pendency of the action and afford them an opportunity to present their objections; therefore, it does not comport with the requirements of due process.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for alternative service of process is DENIED.

**IT IS SO ORDERED.**

Dated: July 20, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge